UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
──────────────────────────────────

CARLOS COLVIN,

                          Plaintiff,

            V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

──────────────────────────────────

**REPORT AND
RECOMMENDATION**

09-CV-132
(FJS/VEB)

## I. INTRODUCTION

In May of 2006, Plaintiff Carlos Colvin applied for Supplemental Security Income ("SSI" )benefits under the Social Security Act.  Plaintiff alleges that he has been unable to work since January of 1994 due to various physical and mental impairments.   The Commissioner of Social Security denied Plaintiff's application.  Plaintiff, by and through his attorneys, Lachman & Gorton, Peter A. Gorton, Esq. of counsel, filed this action seeking judicial review of the Commissioner's decision pursuant to  42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

**II. BACKGROUND**

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on May 8, 2006, alleging disability beginning on January 1, 1994. (T at 60-61, 67).[1]  The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 4, 2008, in Binghamton, New York before ALJ Robert E. Gale.  (T at 299).  Plaintiff appeared, along with his attorney, and testified. (T at 302-325).

On November 28, 2008, ALJ Gale issued a decision finding that Plaintiff was not disabled, as defined under the Social Security Act, between the date the benefits application was filed and the date of the ALJ's decision. (T at 12-20).  The ALJ's decision became the Commissioner's final decision on December 31, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 4-7).

Plaintiff timely commenced this action by filing a Complaint on February 3, 2009. (Docket No. 1).  The Commissioner interposed an Answer on June 12, 2009. (Docket No. 9).  Plaintiff filed a Brief in support of the action on September 1, 2009. (Docket No. 13). The Commissioner filed a Brief in opposition on November 12, 2009. (Docket No. 18).  On December 3, 2009, Plaintiff moved for leave to submit a letter in rebuttal, with a copy of the two-page rebuttal letter attached to the motion. (Docket No. 18).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

For the reasons that follow, it is respectfully recommended that the Plaintiff's motion for leave to submit a rebuttal be granted, the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further administrative proceedings.

## III. DISCUSSION

### A.   Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

4

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.   Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 8, 2006, the date the application for SSI benefits was filed.  The ALJ concluded that Plaintiff had the following impairments considered "severe" under the Social Security Act: HIV, bipolar disorder, and degenerative disc disease. (T at 14).

However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 15).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for 6 hours in an

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

8-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. (T at 16). The ALJ determined that Plaintiff could understand, remember, and perform simple tasks independently and could understand, remember, and perform some limited complex tasks. (T at 16). The ALJ found that Plaintiff could maintain a regular schedule and interact appropriately with others. (T at 16).

The ALJ concluded that Plaintiff could not perform his past relevant work as a leather worker because that employment required lifting more than 50 pounds occasionally. (T at 18). Considering Plaintiff's age (47 on the date the application was filed), education (high school), work experience (unskilled), and RFC (light work), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 19). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, between the date the application was filed and the date of the ALJ's decision. (T at 20). As noted above, the ALJ's decision became the Commissioner's final decision on December 31, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 4-7).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers four (4) principal arguments in support of his position. First, he contends that the ALJ's physical residual functional capacity assessment is not supported by substantial evidence. Second, Plaintiff challenges the ALJ's psychiatric RFC determination. Third, Plaintiff argues that the ALJ erred by failing to consult a vocational expert. Fourth, Plaintiff asserts that the ALJ's credibility assessment was flawed. This Court will address each argument in turn.

### a.    Physical RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ concluded that Plaintiff retained the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for 6 hours in an 8-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. (T at 16).

Plaintiff challenges the ALJ's physical RFC determination on two (2) grounds.  First, Plaintiff argues that the ALJ failed to include and/or address Plaintiff's need to alternate between sitting and standing to relieve his pain (i.e., a "sit/stand option").  Second, Plaintiff contends that the ALJ erred because he did not address the side effects of Plaintiff's medications on his ability to perform basic work-related activities.

### i.    Sit/Stand Option

Dr. Barbara Chaffee, one of Plaintiff's treating physicians, opined that Plaintiff would need a sit/stand option to perform work on a regular basis. (T at 294).   Dr. Mark Henderson, a consultative orthopedic examiner, indicated that Plaintiff would have a mild restriction for prolonged standing, walking, or sitting. (T at 138).   He also opined that Plaintiff "should be able to do moderate amounts of sitting and standing, as long as he can alter position to [be] comfortable." (T at 138).

The ALJ referenced Dr. Chaffee's sit/stand option finding, but assigned her overall opinion "little weight" on the grounds that it was contradicted by treating notes made by Dr. Sethi, Plaintiff's treating orthopedic surgeon. (T at 18).   The ALJ mentioned Dr. Henderson's finding that Plaintiff would need to "alter position to [be] comfortable" and assigned "some weight" to Dr. Henderson's assessment.  (T at 17).  However, the ALJ did not incorporate Dr. Henderson's finding into the RFC determination and did not explain how he reconciled that finding with his overall assessment.   As a threshold matter, the Commissioner argues that no such reconciliation was necessary because Dr. Henderson's reference to "alter[ing] position" does not equate to a finding that Plaintiff requires a sit/stand option.  This argument is difficult to accept when considering the context of the finding, which was as follows: "[Plaintiff] should be able to do moderate amounts of sitting and standing, as long as he can alter position to [be] comfortable." (T at 138).  In any event, the ALJ made no effort to address or resolve any arguable ambiguity with regard to Dr. Henderson's finding by, for example, re-contacting the consultative examiner and requesting clarification.

This Court finds that a remand is necessary for further development of the record concerning the nature and extent of Plaintiff's need for a sit/stand option.  Dr. Chaffee's

assessment that Plaintiff required a sit/stand option was presumptively entitled to controlling weight.  Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

The ALJ's decision to assign little weight to Dr. Chaffee's assessment was based upon an inadequately developed record and supported by a single sentence: "[Dr. Chaffee's] assessment is not consistent with Dr. Sethi's notes that indicate conservative treatment was all that was necessary to relieve [Plaintiff's] pain and keep him stable." (T

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

at 18).  Dr. Khalid Sethi, Plaintiff's treating orthopedic surgeon, indicated in March of 2007 that Plaintiff had a "stable symptom complex" and indicated that continuation of "conservative management strategies" was appropriate. (T at 290).

Contrary to the ALJ's finding, Dr. Sethi's notes do not contradict Dr. Chaffee's assessment.  A "stable symptom complex" is not necessarily mild or consistent with an ability to engage in prolonged sitting or standing without a sit/stand option.  Rather, a "stable symptom complex" suggests that Plaintiff's symptoms are unchanged (*i.e.* stable) over time.  Further, the recommendation of a conservative treatment approach does not imply the absence of disabling limitations generally or indicate any finding with regard to the need for a sit/stand option.   See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir.2008)("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen.  The ALJ and the judge may not 'impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'")(quoting Shaw v. Chater, 221 F.3d 126, 134-35(2d Cir.2000)).

The Commissioner attempts to justify the ALJ's decision by pointing to diagnostic test results (*e.g.* an MRI of the lumbar spine), which the Commissioner characterizes as indicating "minimal" findings. (Docket No. 17, at p. 13-14).  However, this is exactly the sort of "circumstantial critique by [a] non-physician[]" that the Second Circuit has cautioned "must be overwhelmingly compelling in order to overcome a medical opinion." Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 862 (2d Cir.1990).

Given Dr. Chaffee's assessment (which was consistent with Dr. Henderson's findings), the ALJ was obliged to develop the record concerning the extent to which Plaintiff required a sit/stand option.  In general, sedentary work requires six hours of sitting and up to two hours of standing and walking in an eight-hour day. <u>See</u> SSR 96-9p; SSR 83-10. Light work involves walking and standing off and on for approximately six hours, with intermittent sitting possible for the remaining two hours. SSR 83-10.

If the need for a sit/stand option "cannot be accommodated by scheduled breaks and a lunch period," it will erode the claimant's occupational base. SSR 96-9p. As such, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p.  Here, the ALJ did not adequately develop the record, did not properly evaluate the treating physician's opinion, and did not make a specific finding regarding the frequency of Plaintiff's need to alternate sitting and standing. Further development of the record is needed regarding the scope and extent of Plaintiff's need for a sit/stand option.  Remand is therefore required. <u>See</u> <u>Allen v. Commissioner of Social Sec.</u>, No. 08-CV-650, 2010 WL 5175027, at *8 (N.D.N.Y. Dec. 14, 2010); <u>Kouadio v. Astrue</u>, 08-CV-881, 2010 WL 4922672, at *6 (W.D.N.Y. Dec. 2, 2010).  On remand, the ALJ should re-contact Dr. Chaffee to provide further information concerning the nature and extent of Plaintiff's need for a sit/stand option.

### ii.   Side Effects

Plaintiff's prescription medications included Depakote, Geodon, Lexapro, and Kaletra. (T at 296).  Dr. Chaffee noted that some of Plaintiff's medications were "associated with sedation." (T at 295).  Plaintiff testified that he experiences "[d]izziness, tiredness, fatigue, [and] sleepiness" as side effects of his medication. (T at 315, 322).  He also stated

that the medications cause him to experience difficulty thinking clearly. (T at 322).

The ALJ did not address the side effects of Plaintiff's medications in his RFC determination.  In addition, the ALJ discounted Plaintiff's testimony concerning the limiting effects of his pain and mental impairments, but did not discuss the fact that Plaintiff's testimony was at least partially corroborated by Dr. Chaffee's notation that many of Plaintiff's medications were associated with sedation.  (T at 18). On remand, the ALJ should consider the side effects of Plaintiff's medications as part of his RFC assessment and credibility analysis under 20 C.F.R. § 416.929(c)(3) and SSR 96-7p (requiring consideration of "[t]he type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms").

### b.   Psychiatric RFC

The ALJ concluded that Plaintiff could understand, remember, and perform simple tasks independently and some more complex tasks; maintain a regular schedule; and interact appropriately with others. (T at 16).

Plaintiff challenges this assessment, pointing to an evaluation completed by Dr. Inna Factourovich, his treating psychiatrist, in which she opined that Plaintiff had "moderate" limitations with regard to his ability to sustain an ordinary routine without special supervision, complete a normal work day and week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (T at 173-74).  Dr. Factourovich's treatment notes also described Plaintiff as experiencing various psychiatric symptoms, including mood swings, depression, and

compulsive behavior. (T at 261-272).

In addition, Plaintiff notes that the non-examining State Agency review consultant assessed moderate limitations with respect to Plaintiff's ability to complete a normal work day and week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. (T at 148).

This Court finds Plaintiff's argument unpersuasive.  The ALJ's psychiatric RFC determination is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Principally, Plaintiff misconstrues the definition of "moderate" in the context of Dr. Factourovich's evaluation, implying that a moderate limitation is disabling in nature.  In fact, the form completed by Dr. Factourovich defined "moderate" as "more than a slight limitation but the individual is still able to function satisfactorily." (T at 173).   As such, Dr. Factourovich's assessment of moderate limitations in some areas is not supportive of Plaintiff's argument and, in fact, supports the ALJ's determination that, while Plaintiff had some non-exertional limitations, his overall ability to perform basic work-related skills was satisfactory.

Moreover, Dr. Factourovich found either no limitation or a mild limitation with respect to Plaintiff's ability to maintain attention and concentration for extended periods of time; perform activities within a schedule; maintain regular attendance and/or be punctual within customary tolerances; interact appropriately with the general public; accept instructions and

respond appropriately to criticism from supervisors; and to respond appropriately to ordinary stressors in the work setting. (T at 173-74). Likewise, the non-examining State Agency review consultant's assessment was consistent with the treating psychiatrist's findings and indicated that Plaintiff was not significantly limited in many areas of functioning, including with respect to understanding, memory, and social interaction. (T at 147-48). This Court finds no error in the ALJ's decision to afford Dr. Factourovich's assessment "considerable weight" in connection with the psychiatric RFC determination, as that assessment was made by a treating provider and was fully consistent with the record evidence. (T at 18).  This Court also rejects Plaintiff's characterization of the "moderate" findings set forth in Dr. Factourovich's assessment as inconsistent with the definition of the term set forth in the assessment.

Additional support for the ALJ's psychiatric RFC assessment is found in the opinion provided by Dr. Christine Ransom, a consultative psychologist.  Dr. Ransom assessed that Plaintiff could understand and follow simple directions; perform simple tasks independently; maintain attention and concentration for tasks; maintain a regular schedule and learn simple tasks. (T at 131).  She found that he would have mild difficulty relating adequately with others; performing complex tasks independently; and appropriately dealing with stress. (T at 131).  Dr. Ransom diagnosed bipolar disorder, but characterized the condition as "mild." (T at 132).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2);

see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of the examining and non-examining State agency medical consultants are supported by the weight of the evidence, including the assessment of Plaintiff's treating psychiatrist. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record). Accordingly, this Court finds no error with regard to the ALJ's psychiatric RFC determination.

### c.   Consultation with a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

15

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When non-exertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by

16

his or her exertional limitations. <u>Id.</u>  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" <u>Id.</u> (quoting <u>Bapp</u>, 802 F.2d at 606).

In this case, the ALJ concluded that Plaintiff's ability to perform work had been compromised by his non-exertional limitations, in particular with regard to the ability to understand, remember, and perform "more complex tasks." (T at 16).  However, the ALJ further found that those limitations did "not significantly narrow the range of work the claimant can perform." (T at 20).   Thus, using Rules 202.13 and 20.13 of the Grids as a framework, the ALJ concluded that Plaintiff was not disabled.  (T at 19).

In his rebuttal brief/letter, Plaintiff argues that the ALJ should not have relied upon the Grids and should have consulted a vocational expert. (Docket No. 18).  In the exercise of its discretion, this Court has considered this rebuttal argument and recommends that Plaintiff's motion for leave to submit a rebuttal be granted.   However, should this recommendation be adopted, this Court nevertheless finds the rebuttal argument unpersuasive.

The ALJ's analysis at step five was supported by substantial evidence and in accord with applicable law insofar as it related to Plaintiff's non-exertional impairments. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational

base." Id.; SSR 96-9p ("When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.").

The ALJ's conclusion that Plaintiff did not have a substantial loss of ability to meet the basic mental demands of competitive, remunerative, unskilled work was supported by substantial evidence, as outlined above, including the assessments of the consultative examiner, State Agency review consultant, and Plaintiff's treating psychiatrist.  This evidence adequately supported the ALJ's conclusion that Plaintiff was capable of understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.  Accordingly, this Court finds no reversible error with respect to this aspect of the ALJ's decision.

### d.   Credibility

Courts in the Second Circuit have determined pain is an important element in disability claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other

symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his or her reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limited effects of the symptoms were not credible to the extent alleged. (T at 18).

Plaintiff testified that he could not sit or stand in one position for too long. (T at 313). He explained that he could stand or sit for approximately 15 minutes without shifting positions. (T at 313).   This testimony was consistent with the treating physician's assessment and the finding of the consultative examiner.  As discussed above, the ALJ did not adequately develop the record concerning the extent, nature, and scope of Plaintiff's need for a sit/stand option.  Plaintiff's credibility with regard to this aspect of his testimony should be revisited on remand after further development of the record.   Likewise, as outlined above, the ALJ should also give greater consideration to the side effects of Plaintiff's medication and the impact, if any, of those side effects on Plaintiff's physical RFC.

Concerning Plaintiff's testimony related to his psychiatric difficulties (T at 312, 314-15), this Court finds that the ALJ's decision to discount this testimony was supported by substantial evidence, namely, the assessments of the consultative examiner, State Agency review consultant, and Plaintiff's treating psychiatrist.  As such, this Court finds no error

with regard to that aspect of the ALJ's credibility assessment.

### 3.     Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).   For the reasons set forth above, this Court recommends that this case be remanded for further findings.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motions for leave to submit a rebuttal (Docket No. 18) be granted, the Commissioner's motion for judgment on the pleadings be denied, the decision of the Commissioner be reversed, and the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

21

Dated:   June 10, 2011

      Syracuse, New York


**V. ORDERS**


Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).


SO ORDERED.

June 10, 2011

_____
Victor E. Bianchini
United States Magistrate Judge